# Esling *versus* Zantzinger.

An order by a landlord on his tenant, in favor of a creditor of the landlord, to pay to the creditor the rent as it becomes due, which order is subsequently accepted by the tenant, creates a liability by the tenant in favor of the creditor, which can be enforced by action, in the name of the creditor. The liability of the tenant to the action in the name of the creditor, is grounded not merely on the extinguishment of the liability of the tenant to the landlord, but mainly on the express promise, for which there was, in this case, sufficient consideration.

ERROR to the District Court, *Philadelphia*.

This was an action on the case, brought in the District Court, under the following circumstances: Charles McCarraher owned a house in Philadelphia, and by lease under seal dated 29th January, 1839, demised part of it to defendant; term to commence 1st of February, 1839, for five years, for the first year at $700, and following ones at $800; rent to be paid monthly on the first of each month.

At and *before* June 11, 1840, McCarraher was indebted to the plaintiff and others in several bonds, secured by mortgages on said property—one for $5000, one for $12,000—upon which there was due from $600 to $800 interest. The plaintiff, who acted for herself and family, in June, 1840, demanded the interest due from McCarraher, and threatened to foreclose unless it was paid. McCarraher, to avoid suit, offered to give Miss Esling orders on the tenants of the house, (of which there were several) accepted by the several tenants, for the rent as it should fall due. The *plaintiff agreed to this*. On June 11, 1840, McCarraher gave such orders on all the tenants, including the defendant, in these words:

"PHILADELPHIA, June 11, 1840.

*Mr. George Zantzinger*—

Will please pay to Ann C. Esling the amount of rent which may fall due hereafter, for such part of premises No. 10 South Fifth street as is occupied by him, and oblige

CHARLES C. McCARRAHER.

Accepted, GEORGE ZANTZINGER."

The defendant continued to pay on the above order for some time, but at length required of the plaintiff's agent that he should bring from McCarraher each month an order for the month, in place of the general one, giving as a reason that he wished to *keep each special order as a voucher*. As it was difficult to see McCarraher, defendant offered to pay the rent then due, if the agent would leave the general order until he could get a special one for

that month from McCarraher, when defendant promised to return the general one.  The agent procured the special order, presented it to defendant, and demanded the general one.  Defendant said he had mislaid it, and though the agent often called for it, it was never returned.  After this defendant refused to pay further rent to plaintiff, and she sued to recover it in this action.

The plaintiff gave in evidence the lease to defendant, and certain bonds and mortgages on the premises leased, executed by McCarraher to plaintiff and others of her family, as alledged in the narr.

Plaintiff's counsel called on defendant to produce the general order of June 11, 1840.  Defendant said it was lost or mislaid, and could not be produced.

It was alledged on the *part of defendant* in error, that payments of rent were made under the special orders, until July, 1841, at which time Zantzinger refused to pay; that the reason of his refusal was, that McCarraher had become indebted to him, in about the sum of $1200, which he intended to use as an offset against the rent, until other persons became the owners of the premises. That no suit was brought by Esling against him for several years, and not until the property occupied by him had been sold at sheriff's sale.  That it was sold on an execution from the District Court. Sheriff's deed to the Eslings dated June 17, 1843, viz: about seven months before the expiration of the lease.  That McCarraher never released Zantzinger from his liability to him, upon the lease, which continued to exist, as appears by the orders drawn every month by McCarraher, nor did the plaintiffs in error ever release McCarraher from the payment of interest to them upon his bonds and mortgages, and agree to substitute the rent for the said interest.

The plaintiff in error claims payment of the rent from Zantzinger, from the time when he ceased to pay the orders, up to the time of the acknowledgment of the sheriff's deed.

The court below non suited the plaintiff on the ground that there was no consideration to sustain the defendant's promise to the plaintiff.

Error assigned:
That the Court erred in entering judgment of non suit.

The case was argued by *McIlvaine* and *Mallery* for plaintiff in error.

*Mr. McIlvaine.*—A question is whether there was any consideration for the promise by defendant.  Defendant's claim against McCarraher, was a bond secured by a second mortgage on the premises which defendant purchased, and he claimed to set off the bond against the rent.

[Esling *v.* Zantzinger.]

Any order, which makes an appropriation of a fund or claim, is an equitable assignment of it, if made for consideration. The order, of itself, created no privity between plaintiff and defendant, but as soon as defendant accepted it, a privity existed, and the holder of the claim could sue. Tatlock *vs.* Harris, 3 *Term. Rep.* 180; 5 *Peters* 580; Tiernan *vs.* Jackson; 8 *Watts & Serg.* 9; Nesmith *vs.* Drum; 6 *Watts* 182; Stevens *vs.* Hill, 5 *Esp.* 247; 4 *Cowen* 13; *Story's Eq.* § 1040–6. The undertaking of one man to pay the debts of another, does not require a consideration moving between them—a pre-existing debt is a sufficient consideration. 6 *Paige*, 641; 3 *Greenleaf*, 346; 1 *Vesey, jr.*, 280.— That McCarraher, after giving the order for rent, and acceptance by Zantzinger, could not distrain. 1 *Hill*, 583, Morton *vs.* Hill.

*H. Zantzinger* for defendant in error.—When defendant declined paying, he informed her agent of the ground of his refusal.— Plaintiff might have sold the property under the mortgage, but did not for years, and suffered the rent to accrue.

There was no communication between Esling and defendant.

That the order in question was not negotiable, and that the word "accepted," written on it by defendant, creates no liability. 10 *Barr* 28, Gillespie *vs.* Mather; rent not due, is not a debt. 8 *Watts & Serg.* 183, Bosler *vs.* Kuhn; 10 *Barr* 123, Prentiss *vs.* Kingsley. There was *no consideration* for the acceptance or promise.

1. That as the order was not commercial paper, there must have been something due and payable from defendant to McCarraher, at the time of acceptance.

2. There was no extinguishment of the original liabilities of the parties to the arrangement. 6 *Watts* 182, Blymire *vs.* Boistle; 3 *Barr* 330, Ramsdale *vs.* Horton; 4 *Barnwell & Cresswell*, 163, Wharton *vs.* Walker; 5 *B. & Ald.* 228; 3 *B. & C.* 591; 4 *Bing.* 312–13; 2 *B. & C.* 842; 8 *do.* 395–9; *Bing.* 312–13.

*Mallery* in reply.—The lease to Zantzinger was after the date of the mortgage. McCarraher was told that unless he paid, the mortgage would be foreclosed. He agreed to give orders on the tenants, and did give them, defendant being included; plaintiff had the power to close the mortgage and dispossess defendant.— There was thus sufficient consideration, and Esling, McCarraher, and Zantzinger were parties to it; defendant derived a benefit, from being allowed to occupy the house. In some of the cases cited all the three parties did not agree, but here all did agree. That after McCarraher gave the order on defendant, he lost his right of action against defendant, and could not distrain; neither could Esling distrain; so that defendant's property was relieved from that liability.

As to the right of action, if defendant had not accepted the

order, then the suit on the order would have had to have been brought in the name of McCarraher, for the use of Esling; but as defendant accepted, this was a promise by him, on which he was liable to an action by her.

The opinion of the court was delivered by

ROGERS, J.—The acceptance of the order amounted to an express promise to pay Ann Esling the rent which fell due for that part of the demised premises occupied by Zantzinger under the lease from McCarraher. It is of equal efficacy as if he had given her a written engagement in express terms to pay her the amount of the rent, as it became due. There is, therefore, no difficulty in the way of the plaintiff on the ground of want of privity of contract, which is the distinguishing feature in the cases relied on by the defendant in error. The case is presented of a contract between McCarraher, Ann Esling and Zantzinger, in which McCarraher agrees to give an order on his tenant, in favor of his creditor, which she agrees to accept, and which the tenant expressly promises to pay to the holder of the order. From this statement of the case, it results that as the action is founded on an express contract, the only question is, whether there is a consideration for the promise. For I agree that where there is no promise, the action cannot be sustained, in the name of the holder, on the ground that there is no privity of contract; McCarraher and Ann Esling cannot constitute the latter the creditor of Zantzinger, without his consent; but when he agrees to it, as here, there is nothing to prevent a suit being sustained, in her name.

Is there, then, a consideration for the promise to pay? A consideration, as is said in Hind *vs.* Holdship, 2 *Watts* 104, is sufficient, if it arise from any act of the plaintiff, from which the defendant, or a stranger, derives any benefit, however small, if such act is performed by the plaintiff, with the assent, express or implied, of the defendant, or by reason of any damage or any suspension or forbearance of the plaintiff's right, at law or in equity, or any possibility of loss, occasioned to the plaintiff, by the promise of another, although no actual benefit accrues to the party undertaking. This definition is broad enough to cover this case, in several particulars. The agreement, which is one transaction, was intended for the benefit and mutual accommodation of all the parties. It was for the benefit of the defendant, because after the contract it would be a fraud on the agreement to permit the landlord to distrain for the rent. It also quieted his possession by securing to him the enjoyment of the lease during the term, which would be destroyed by a sale on the mortgage, which was paramount to the lease. That Zantzinger, at any rate, considered the arrangement advantageous, is apparent from what he said when he accepted the order; that he was happy to find that Mr. Esling,

who was the agent of the plaintiff, had the receiving of the rent; that he would not be annoyed by McCarraher calling on him, in future, and receiving small payments on account. But the defendant is nøt the only person benefitted, but McCarraher, also. It appears that the latter, being in arrear for the interest, on the mortgage, was told he must pay the interest, or the mortgage would be foreclosed. McCarraher complained of his poverty, and to prevent the foreclosure, (for this is the plain import of Esling's testimony), he offered to give accepted orders on the tenants of his property. Accordingly this order was given on Zantzinger, among others, which being accepted, in due and proper form, was received by the plaintiff, and proceedings stayed. It was the forbearance on the part of the plaintiff, which, of itself, constituted a sufficient consideration, not only as against McCarraher, but the defendant, who makes himself a party to it, by accepting the order. Without this engagement of Zantzinger and the other tenants, we have reason to believe, plaintiff would have proceeded to foreclose the mortgage. It is immaterial, as must be observed, whether the benefit accrues to a defendant or a stranger. Thus if A promise to pay B £100 in consideration that B will transfer to C a horse, the consideration is good. B can support a suit against A on his express promise. It is therefore idle to say that there is no consideration for Zantzinger's promise to pay the rent to Ann Esling, or that she cannot, in the absence of authority to the contrary, support suit, in her own name, against him.

How then does the case stand on authority? This is the next enquiry. In Tatlock *vs.* Harris, 3 *Tem. Rep.* 180, BULLER, J. says: Suppose A owes B £100, and the three meet together, and it is agreed between them that A shall pay C the £100. B's debt is extinguished, and C may recover that sum against A. Now the principle that governs the one case is not the extinguishment of the debt, as has been erroneously supposed, but the promise, and this is because SHEPPARD, who admits the principle of the case as stated by BULLER, says that it goes on the ground of there being an express promise. That the parties met together, was no way important, except that it shews that the promise was made to C.

The case of Ramsdale *vs.* Horton, 3 *Barr* 330, although not direct, may be cited as an authority to the same purpose. A being debtor of B, at his request promised to pay the amount of his indebtedness to C, who was a creditor.

It was held that C cannot sue A, unless he has accepted him in lieu of B. By this, I understand the action will not lie, unless there was a promise to pay him, which would have been, as in Tatlock *vs.* Harris, an extinguishment of the debt. So the case of Morton *vs.* Taylor, 1 *Hill*, 583, is an authority to the same point. In most of the cases, the Judges speak of the extinguishment of the debt, it is true, but that is not the only consideration for an

[Esling *v.* Zantzinger.]

express promise, as has been already shewn. The defendant in error relied on Blymire *vs.* Boistle, 6 *W.* 182; Wharton *vs.* Walker, 4 *B. & C.* 163; *E. C. L.* 10, 191; Spratt *vs.* Hobhouse, 4 *Bing.* 173; 13 *E. C. L.* 395, and other cases. But all the cases cited, when carefully examined, are distinguishable from this, in these essential particulars, that in none of them is there an agreement among all the parties, coupled with an express promise to pay by the debtor, to the person in whose favor the order is drawn. In this consists the distinction. In all of them, the privity of contract, which is indispensable to the maintainance of the suit in the name of the original creditor, is wanting. Mr. Justice SERGEANT, in Blymire *vs.* Boistle, gives the true reason for these decisions. When a debt, as he correctly says, already exists from one person to another, a promise by a third person to pay such debt, being for the benefit of the original debtor, relieves him from the payment of it, he ought to have a right of action against the promissor for his own indemnity; and if the promissor were also liable to the original creditor, he would be subject to two different actions for the same debt, which would be inconvenient, and might lead to injustice. And this is true, and hence it is, the court will not put him in this condition, without his express consent. They will not imply a promise, but the promise must be expressly made. The principle is that the person to whom the promise is made, is the person to bring the action, and with this, all the cases, when strictly examined, are in harmony. In most, if not all the cases cited, the judges following Tatlock *vs.* Harris, speak of the extinguishment of the debt, without adverting to the principle of the case put by BULLER, which unquestionably was the express promise. That the extinguishment of the debt would be a consideration, will not be doubted by any person, but surely it was not intended to hold that nothing short of the extinguishment would be a consideration. This would be absurd and contrary to all the authorities, certainly so, to the principles held in Hind *vs.* Holdship, before cited. If A owes B £100, and C, to accommodate B, advances to him the £100, and takes an order on A, who accepts it and promises to pay C, surely C may bring an action in his own name against A, and recover the amount from him. In such a case, there is a privity of contract between A and C, arising out of the express contract, and the consideration passing between B and C is sufficient to support the promise. If, however, in the case supposed, A had not promised to pay C, the action must be brought in the name of B; and this illustrates the principle and reconciles all the cases. Wharton *vs.* Walker is most relied on, and is said to be scarcely distinguishable from the present case. It certainly does resemble it in several aspects, but it differs from it in the essential particular, that there is no promise to pay to the recipient of the order; the promise is to the landlord who gave the order, a distinction

adverted to by Mr. Justice SERGEANT, in Blymire *vs.* Boistle.—
It is evident in Blymire *vs.* Boistle, that had Boistle participa-
ted in the contract, the decision would have been otherwise.—
I must confess, however, I am not satisfied with the decision in
Wharton *vs.* Walker. In my judgment, it is a case of question-
able authority. The promise to the landlord, although the re-
cipient of the order was not present, ought to have been treated
as a promise to him, under all the circumstances of the case.
But be this as it may, it is not authority adverse to the plaintiff
in error, and the same, with equal propriety, may be said of Coxon
*vs.* Chadley, 3 *B. & C.* 591. It is put, as I understand, on the
ground of the absence of an express contract. Without noticing
with particularity, all the cases cited, all of which depend on the
distinction I have already adverted to, I have come to the con-
clusion, that there was error in the ruling of the District Court,
and that the judgment must be reversed.

Judgment reversed and *venire de novo* awarded.